## Locey Coal Mines

v.

## The Chicago, Wilmington and Vermillion Coal Co.

*Mines—Creditor's Bill—Receiver—Order for Sale of Property—Sale without Redemption—Statute—Priority of Claims—Receiver's Certificates—Practice—Oppression.*

1. The statute reserving the right to redeem real property sold under execution, decree of foreclosure, or to enforce a lien, has no application to an order for the sale of realty held as assets by a receiver appointed by the court by consent of both parties, in proceedings under a creditor's bill, such sale being to secure funds with which to discharge mortgage incumbrances, receiver's certificates and other claims against the owner.

2. The plaintiff in error can not complain of an error which has not injured him, although it may have injured one who has not joined in the writ of error.

3. In the case presented, the finding of the master as to the value of the property was but of slight importance, as it can neither affect the indebtedness nor the amount of the sale.

4. The law does not regard the legal enforcement of a contract as oppression, although it may result in the sacrifice of the defendant's property.

[Opinion filed December 19, 1888.]

IN ERROR to the Circuit Court of Will County; the Hon.
DORRANCE DIBELL, Judge, presiding.

Mr. HENRY S. MONROE, for plaintiff in error.

Mr. GEORGE S. HOUSE, for defendant in error.

*Per Curiam.* This was an original creditor's bill filed by
the defendant in error against the plaintiff in error. The
plaintiff in error was a corporation organized under the laws of
Illinois for the purpose of carrying on the business of mining
and selling coal. The property of the plaintiff in error con-
sisted of 280 and 30-100 acres of land in Bureau County, Illi-
nois, in which it had an equitable interest, and also coal rights
under 211 71-100 acres of land adjoining, together with mining
shaft, air shaft, tipple house, thirty miners' houses. steam-
engine, boiler, hoisting apparatus, machinery, pumps, cars,
tracks, screens, pit and car scales, loading dock, boat, steam
tug, etc., necessary for carrying on the coal business. The
defendant in error was the judgment creditor of plaintiff in
error. Execution had been issued and returned "no property
found." The bill showed the existence, besides the judgment,
of a $30,000 trust deed to Hinchman, and a mortgage to Lewis
of $1,800, both duly recorded; that the plaintiff in error was
much embarrassed; that suits were being instituted, and show-
ing that if the property could be preserved as a unit, it would
be ample to pay all its debts, and praying for a receiver.

The receiver was accordingly appointed by consent of the
parties herein, and afterward took possession of the property.
Afterward, on petition of the receiver, he was empowered by
the court to issue receiver's certificates and borrow $10,000 for
the purpose of operating the mine and paying amounts due
the employes ($7,992.11) and to make repairs. Upon the
petition of the plaintiff in error, by order of court the receiver
was permitted to buy, in the name of the corporation, 300 acres
more of mining rights, March 9, 1887. This cost $3,200. The

inventory of plaintiff in error showed goods in store to be of the value of $1,915.31, mining property $1,924, and boat $632.40. Several claims were proven up against the plaintiff in error. On petition of defendant in error and consent of plaintiff in error, the receiver was afterward authorized by the court to borrow $15,000 and issue receiver's certificates, and make improvements on the property, and the plaintiff in error deeded all the coal mine property, real and personal, to the receiver. Upon the petition of defendant in error the court ordered the sale of all the property of the plaintiff in error vested in the receiver, consisting of the property above named, to be sold at the front door of the court-house in the city of Joliet, on May 28, 1888, between the hours of 9 A. M. and 5 P. M., without redemption, the master to report the sale for confirmation on May 29, 1888.

The order for sale finds the amounts of the several debts to be paid and decrees the order in which they shall be paid. The debts were large, consisting of the above mortgages and trust deed, and a large amount of receiver's certificates and other miscellaneous debts not necessary to mention.

The plaintiff in error brings the case here by writ of error from this court, and assigns for error the making of the above order of sale, and the order selling the real estate of the said coal company without redemption, and also that the master found the value of the property too low, and that the court erred in approving such finding, and in placing the receiver's certificates ahead of and prior to the Lewis mortgage. The main point relied on, however, to reverse the order of the court below, is the supposed violation by the court below of Secs. 16, 17 and 18, of the statute entitled Judgments and Decrees, allowing redemption. The statute reads as follows: "Sec. 16. When any real estate is sold by virtue of an execution, judgment or decree of foreclosure of mortgage, or the enforcement of mechanic's lien or vendor's lien, or for the payment of money, it shall be the duty of the sheriff, master in chancery or other officer, instead of executing a deed for the premises sold, to give the purchaser a certificate * * * and the purchaser will be entitled to a deed unless the premises shall be redeemed, as provided in this act."

Sec. 17 provides for recording the certificate.

Sec. 18 says: " Any defendant, his heirs, administrators or assigns, or any person interested in the premises through or under the defendant may, within twelve months from said sale, redeem the real estate so sold * * * whereupon such sale and certificate shall be null and void."

We have examined the brief of plaintiff in error on this question with the care that its importance deserves, but are forced to the conclusion that the above statute does not apply in a case like this.

This is to be more likened to a sale by the assignee of an insolvent estate, or in bankruptcy under the order of the court, or in the settling up of a partnership estate where real estate is sold for the purpose of reducing the assets to money, with which to effect the payment of the debts and the distribution of the estate, than to a common sale under the decree of court specified in the above recited statute. The court in the receivership had the entire control of the property in possession of the receiver, as well as the legal title in the receiver, placed there by the voluntary action of the plaintiff in error itself. The court was made the custodian of the property to administer, manage and sell it for the best interest of all. It was the agent of the plaintiff in error to sell and dispose of the property for the benefit of the unsecured creditors and the receiver's certificates, as well as for the trust deed and mortgage, and its functions were not to foreclose these mortgage securities, but to administer and sell the property for the general benefit of the creditors. Then, again, we think that the case here may very properly fall within the category of cases where the property consists of real and personal assets so intermixed as to constitute a unit, where it can not be sold separately without damage to the property, as railroad right of way, track engines, rolling stock, etc , and may be regarded as an exception to the general rule. It may properly fall within the principle of the following cases: Hammock v. Loan and Trust Co., 105 U. S. 77; Peoria & S. R. R. Co. v. Thompson, 103 Ill. 187. We think, therefore, that the order of sale without redemption was not only proper, but it would have been improper not to have so ordered it.

The point in regard to the finding of the master of the values of the property is of little importance, whether too high or too low, as it does not make the debts any more or less, or affect the amount of the sale. It is not an error, if an error, for which the order could be reversed.

The other point, that the certificates of the receiver are put ahead, in order of payment, of the Lewis mortgage, can not be raised here by the plaintiff in error, as Lewis has not joined in this writ of error and he alone is affected.

Much has been said and argued, by counsel for the plaintiff in error, in regard to the alleged bad faith and oppressive conduct of the defendant in error, in inducing it to borrow money on the property and then, contrary to expectation, pushing for its sale with design to acquire it at a sacrifice. Were these charges well founded, upon which subject we express no opinion, we would certainly wish it were otherwise; but the right to the relief the law gives one having a claim past due against another to have it paid or force the sale of the debtor's property, can not be withheld on such consideration. The law does not regard it as oppression. The law will enforce contracts and payments notwithstanding the sacrifice of the debtor's property, but in doing so it will be careful to do the latter as little harm as possible.

Seeing no error in the record, the order of the court below is affirmed, and it is further ordered that the cause be remanded to the court below with instructions by supplemental decree to fix a time and place of sale, and the manner of advertisement thereof, as in its discretion it may deem best.

*Order affirmed and cause remanded.*